UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDY JONES,<br><br>    Plaintiff,<br><br>    v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>    Defendant. | Civil Action No. 08-cv-2193 (RLW) |

**MEMORANDUM OPINION[1]**
**GRANTING MOTION FOR SUMMARY JUDGMENT**

  This matter is before the Court on the Motion for Summary Judgment (Docket No. 30) filed by Defendant Washington Metropolitan Area Transit Authority ("Defendant" or "WMATA"). In her Second Amended Complaint, Plaintiff Judy Jones, a white female, asserts three causes of action against WMATA. Count I alleges Title VII race discrimination, Count II alleges Title VII sex discrimination, and Count III alleges retaliation in violation of Title VII. Defendant has moved for summary judgment as to all three counts. See Fed. R. Civ. P. 56.

  For the reasons set forth briefly below[2], Defendant's motion for summary judgment shall be granted.

  Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P.

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of material fact exists if the evidence, viewed in the light most favorable to the non-movant, "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A party, however, must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. Id. at 252.

COUNT I

As stated above, Count I alleges race discrimination in violation of Title VII. In her complaint, Plaintiff alleges that WMATA has prevented her advancement by "refus[ing] to provide training and advancement opportunities to Plaintiff" and that "WMATA's black managers have provided Plaintiff with less favorable performance evaluations and lower pay increases than her black co-workers." Second Amended Complaint ¶¶ 15-24. In determining whether the undisputed facts entitle Defendant to summary judgment, the Court will consider the evidence as follows:

> In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not – and should not – decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient

---

2   Rule 56(a) was amended in 2010 to require the trial court to "state on the record the reasons for granting or denying the motion [for summary judgment]." The Advisory Committee Notes to the amendment point out that "[t]he form and detail of the statement of reasons are left to the court's discretion." Prior to the 2010 amendments, a statement of reasons was generally not required, even when granting summary judgment, since the trial court makes no actual factual findings and the legal ruling is reviewed *de novo*. See, e.g., Summers v. Department of Justice, 140 F.3d 1077, 1079-80 (D.C. Cir. 1998) (stating general rule, but noting an exception for Freedom of Information Act cases due to particular statutory requirements). See generally, Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2575 (2008).

evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C.Cir. 2008).[3]

Thus, the first question is whether Plaintiff has presented sufficient evidence for a jury to find that she was subjected to an adverse employment action.

The Court finds that Plaintiff's claim that she was denied training and advancement opportunities and had to seek out training on her own is insufficient to establish an adverse employment action. The denial of a single training opportunity is not a material adverse action unless it has a discernible effect on the terms, conditions or privileges of Jones' employment. Beckham v. National R.R. Passenger Corp., 736 F.Supp.2d 130, 148 (D.D.C. 2010); Dorns v. Geithner, 692 F.Supp.2d 119, 133 (D.D.C. 2010); Edwards v. U.S. E.P.A., 456 F.Supp.2d 72, 85-86 (D.D.C. 2006). Plaintiff has failed to prove such an effect here, as there is no evidence showing how the denial of the computer-related training in October 2006 hampered her employment or her advancement at her job. Thus, Plaintiff's Title VII racial discrimination claim, to the extent based on the denial of training, must be dismissed.

---

3 In addition, in reverse discrimination cases like this one, Plaintiff, who is white, is required to show "additional background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority." Harding v. Gray, 9 F.3d 150, 153 (D.C.Cir.1993) (quoting Parker v. Balt. & Ohio R.R., 652 F.2d 1012, 1017 (D.C.Cir.1981)) (brackets and internal quotation marks omitted). This burden, however, is "minimal," and can be met by evidence that "there is something fishy about the facts of the case at hand that raises an inference of discrimination." Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 851 (D.C.Cir. 2006) (quoting Harding, 9 F.3d at 153), cert. denied, 549 U.S. 1166 (2007). The Court finds that Plaintiff has met her "minimal" burden here based on the totality of the evidence, which includes the demographics of Plaintiff's co-workers and Plaintiff's testimony about the racial attitudes of her co-workers, including her testimony about the statement made by her supervisor, Gregory Howard, which is described infra.

However, the allegedly discriminatory performance evaluation is an adverse employment action under these facts, because Plaintiff has presented evidence that her level of salary increase was tied directly to her performance evaluation. See Douglas v. Donovan, 559 F.3d 549, 553 (D.C.Cir. 2009) (personnel evaluation that directly results in a significantly smaller raise of salary is an adverse action under Title VII); Russell v. Principi, 257 F.3d 815, 818-19 (D.C.Cir. 2001) (same).

Nonetheless, WMATA has asserted a legitimate, non-discriminatory reason its actions: that Plaintiff's "competent" evaluation was based on her job performance rather than discrimination, and the undisputed evidence indeed shows that there is a factual basis for WMATA's evaluation of Plaintiff. Thus, the question becomes whether "[Plaintiff] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against [her]." Brady, 520 F.3d at 494.

Plaintiff has failed to produce sufficient admissible evidence to show that WMATA's stated reasons for giving her a "competent" evaluation were a mere pretext and that race or gender discrimination were the real reasons for WMATA's actions. First, Plaintiff argues that 13 of the 16 similarly situated male and black Senior Operations Supervisors received higher evaluations, and therefore higher raises, than Plaintiff, creating an inference of discrimination. However, Plaintiff does not present any evidence demonstrating how the job performance of each of these other Senior Operations Supervisors was similar to her job performance. Absent evidence that the alleged comparators engaged in the same conduct as her, the Plaintiff fails to show that the comparators are truly "similarly situated." [4] See Childs-Pierce v. Util. Workers

---

[4] Defendant contends that there are only six proper potential comparators to Plaintiff. Given the Plaintiff's failure to proffer evidence demonstrating that the comparators are truly similarly situated, the Court need not resolve the issue.

Union of Am., 383 F.Supp.2d 60, 70 (D.D.C.2005) (where plaintiff alleged discrimination in disciplinary actions, court reviewed not just whether the employees were similarly situated based on their job descriptions and duties, but also based on whether the circumstances of each employee's disciplinary offense were "comparably serious"). As the Court of Appeals has explained, in order to demonstrate pretext in a disparate treatment case challenging an allegedly discriminatory performance evaluation, the plaintiff needs to compare the substance of the evaluations themselves. See Paquin v. Federal Nat. Mortg. Ass'n, 119 F.3d 23, 28 (D.C.Cir. 1997) (allowing plaintiff to take discovery of evaluations of the alleged comparators, because "were the evaluations to reveal that other executives received written evaluations less favorable than those of [plaintiff] but nonetheless received higher numerical scores, this would tend to discredit [defendant's] explanation that [plaintiff] was terminated for a legitimate non-discriminatory reason.").

In this case, Plaintiff has not presented any evidence whatsoever examining or analyzing the evaluations of the other employees whom she alleges were treated more favorably. Absent such evidence, Plaintiff has arguably failed to establish a prima facie case of discrimination, but more importantly, Plaintiff has failed to meet her overall burden under Brady. Plaintiff's subjective belief that her evaluation was too low or that the higher evaluations of the other Senior Rail Supervisors were not justified by their performance is insufficient to raise an issue of material fact regarding pretext, particularly here, where plaintiff's testimony in this regard is vague and conclusory[5]. See Vatel v. Alliance of Auto. Mfrs., 627 F.3d 1245, 1247 (D.C.Cir.

---

5 Other than her own testimony, Plaintiff provides no competent evidence that tends to show that WMATA's assessment of her performance was wrong. Plaintiff's contention that Mary Canady's testimony is probative on this issue is unpersuasive, as Canady testified that she did not give Plaintiff "special treatment" and that, if anything, Plaintiff's peers believe that she receives "special treatment" because Plaintiff does not do as much work as they do. Plaintiff also argues that she was given fewer opportunities to prove herself in the areas about which she was evaluated than her male and black counterparts, but this conclusory claim is not supported

2011) ("In light of the record evidence, Vatel's mere personal opinion that she and McCurdy had a positive working relationship is insufficient to surmount summary judgment. It is settled that 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'") (quoting Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir.2000)) (quotation marks and alterations omitted). Despite the fact that Plaintiff took discovery and had the opportunity to review the comparators' evaluations and show irregularities or disparities, she presented no such evidence. Instead, Plaintiff essentially asks this Court to assume, without evidence, that the comparators performed the same as Plaintiff but nonetheless received higher evaluations than Plaintiff. The Court is not permitted to make such an assumption. See Waterhouse v. District of Columbia, 298 F.3d 989, 995-96 (D.C.Cir. 2002) (where plaintiff had provided no evidence that comparators had performance problems similar to hers, her allegations of disparate treatment "added nothing" to the showing of pretext).[6]

The failure to Plaintiff to meet her burden of proof of disparate treatment would ordinarily end the analysis, but Plaintiff strenuously argues that a remark by supervisor Gregory Howard in August 2006 shows that WMATA's evaluation was a mere pretext for racial discrimination. As support, Plaintiff submitted evidence that Howard recounted to Plaintiff how his nephew was, in effect, a victim of "racial profiling" – his nephew, who is black, was purportedly in a car with several white acquaintances when stopped by the police, but the police arrested his nephew and let the white occupants of the vehicle go free. Plaintiff argues that because

---

by evidence that shows in any particular manner how WMATA "intentionally kept plaintiff from gaining the necessary expertise" to be evaluated fairly. See Larson, Employment Discrimination, Ch. No. 8, Proving Disparate Treatment § 8.04 (Matthew Bender 2011).

6 Furthermore, the thin statistical evidence presented by Plaintiff in this case is not of sufficient quantity and quality to meet Plaintiff's burden, particularly where there is no meaningful objective comparison of qualifications or evaluations of the statistical pool. Compare Davis v. Califano, 613 F.2d 957, 962-66 (D.C.Cir. 1979).

Howard told her this story during her performance evaluation session for the 2005-2006 time period and that, since the story had nothing to do with her or her evaluation, it proves that Howard was motivated by racial discrimination during the evaluation.

In the Court's view, even taken in the light most favorable to the Plaintiff, this argument stretches the evidence beyond where a reasonable jury could take it, considering all of the circumstances. Howard's remark does not explicitly indicate that racial animus played any role in Plaintiff's evaluation. Nor does it show that Howard had a preference for black WMATA employees or an animus towards white WMATA employees. Taken in the light most favorable to Plaintiff, the remark could tend to show that Howard may have harbored some resentment against racial discrimination against blacks or against advantages that he perceives are given to whites over blacks in American society. Nonetheless, the Court finds that Howard's statement is insufficient to create an issue of material fact in this case, given the ambiguous nature of the statement, the showing that there was ample factual basis for the evaluation, and the undisputed evidence showing that Plaintiff was rated as "competent" by Lonnie Baxter in 2004, by Belynda Jones in 2005 and by Howard in both 2006 and 2007. Thus, the evaluation of Plaintiff by Howard in 2006 was not only consistent with his 2007 evaluation, but it was also completely consistent with the two immediately prior evaluations of Plaintiff, and those evaluations were performed by two different supervisors. Plaintiff has presented no evidence, other than her self-assessment, attacking her 2004 and 2005 evaluations. Under these circumstances, the Court concludes that a reasonable jury could not find that WMATA's stated reasons for Plaintiff's evaluation in 2006 were a mere pretext and that WMATA intentionally discriminated against Plaintiff. "In order to survive a summary judgment motion, a plaintiff must have more than a scintilla of evidence to support [her] claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C.Cir. 2001) (citing Anderson v Liberty

Lobby Inc., 477 U.S. 242, 252 (1986)).  Thus, the motion for summary judgment as to Count I shall be granted.

COUNT II

Count II of Plaintiff's complaint alleges gender discrimination in violation of Title VII. This count alleges that Plaintiff was denied training and advancement opportunities due to her gender.  Second Amended Complaint ¶¶ 25-30.  This claim relies upon the same evidence and theory as Count I with respect to the alleged adverse employment action.  Thus, the motion for summary judgment will be granted as to this claim for the same reasons stated supra with respect to Count I.

COUNT III

Count III of Plaintiff's complaint alleges retaliation in violation of Title VII.  Plaintiff's theory of retaliation, as stated in her complaint, was that she engaged in protected activity in two ways – her prior lawsuit filed against WMATA, and by filing an internal complaint of discrimination with WMATA's Office of Civil Rights on August 21, 2006 – and that WMATA retaliated against her by denying her training and equipment, giving her lower pay increases and denying her promotion and advancement opportunities.  Second Amended Complaint ¶¶ 31-44.  Plaintiff's Charge of Discrimination filed with the EEOC asserts that the dates the "discrimination took place" were from August 14, 2006 to October 20, 2006, stating that on August 14, 2006, she received a "false low overall performance rating and pay increase" and

8

that Plaintiff was unjustly denied computer-related training in October 2006 in retaliation for filing an internal EEO complaint in August 2006. Dkt #30-5. [7]

To establish her retaliation claim,

> the plaintiff must establish the three elements of a prima facie case of retaliation: first, that she engaged in protected activity; second, that she was subjected to adverse action by the employer; and third, that there existed a causal link between the adverse action and the protected activity. Such a showing raises a rebuttable presumption of unlawful discrimination and shifts to the defendant the burden to rebut the presumption by asserting a legitimate, non-discriminatory reason for its actions. If the defendant does so, the McDonnell Douglas framework disappears, and we must decide whether a reasonable jury could infer intentional discrimination from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory or that the non-discriminatory justification was pretextual.

Broderick v. Donaldson, 437 F.3d 1226, 1231-32 (D.C.Cir. 2006) (quoting Smith v. District of Columbia, 430 F.3d 450, 455 (D.C.Cir.2005) (internal quotation marks and citations omitted)). Here, there is no dispute that Plaintiff's prior lawsuit and the filing of the internal EEO complaint constituted protected activity. However, the Defendant contends either that the alleged retaliatory acts were not actionable adverse actions, or even if so, there is no causal link between the adverse action and the protected activity.

For the reasons stated above, the August 2006 performance evaluation was an actionable adverse action. However, the evaluation occurred on August 7, 2006, prior to the filing of Plaintiff's August 14, 2006 internal EEO complaint. Thus, the evaluation could not have been retaliation for filing the EEO complaint. Instead, Plaintiff contends that the August

---

[7] Plaintiff now asserts that there were multiple acts of retaliation against her by WMATA prior to August 14, 2006, going back several years. However, because these alleged acts were not presented in Plaintiff's Charge of Discrimination and are not reasonably related thereto, they are not properly before the Court. See Payne v. Salazar, 619 F.3d 56, 65 (D.C.Cir. 2010); Mayers v. Laborers' Health & Safety Fund of North America, 478 F.3d 364, 368 (D.C.Cir. 2007). Plaintiff argues that an August 14, 2006 memo that was a part of her EEO complaint should be considered, but that memo was primarily a description of why she believed that her 2006 performance evaluation was unfair. To the extent that the memo described other incidents that could be construed as retaliatory, the Court concludes that they were trivial and do not constitute actionable adverse actions for the reasons discussed infra.

2006 evaluation was retaliation for the filing of her prior lawsuit against WMATA. However, Plaintiff's prior lawsuit against WMATA resulted in a judgment against her employer in 1996 that was affirmed by the Court of Appeals in 2000. See Jones v. WMATA, 205 F.3d 428 (D.C. Cir. 2000). Under the circumstances here, the Court finds that Plaintiff cannot establish a causal link between her prior lawsuit and the August 2006 evaluation, where the lawsuit occurred several years earlier and there are no probative circumstances suggesting a link between the two events. See Taylor v. Solis, 571 F.3d 1313, 1322 (D.C.Cir. 2009) (two and a half month proximity between protected activity and adverse action was insufficient to establish a causal link and retaliatory motive).

The evidence regarding the October 2006 denial of training is also insufficient to defeat summary judgment. While the Court determined above that the denial of training did not rise to the level of an adverse action for the employment discrimination claims, the inquiry in a retaliation claim carries a different – and lesser – burden. In the retaliation context, the question is whether the employer's action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Our Court of Appeals has observed (in a case decided before White) that denial of training opportunities can sometimes constitute an adverse action in the retaliation context. Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C.Cir. 2001) (citing Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1436 n. 16 (11th Cir.1998)).[8] Nonetheless, in Freedman, the Court examined the entire context to determine whether the plaintiff "was treated differently than his peers" and

---

8 Turlington described "actionable claims" as a denial of "material training opportunities." 135 F3d at 1436.

"hobbled" by the allegedly disparate training he received, ultimately finding no adverse action. Id. at 845-46.

The Court of Appeals has also found no adverse action in the retaliation context where the action "may have caused [plaintiff] subjective injury, but it did not objectively harm [her] working conditions or future employment prospects." Forkkio v. Powell, 306 F.3d 1127, 1132 (D.C.Cir. 2002). Thus, the Court of Appeals has explained that "[a]ctionable retaliation claims are limited to those where an employer causes '*material* adversity,' not 'trivial harms.'" Wiley v. Glassman, 511 F.3d 151, 161 (D.C.Cir. 2007) (quoting White, 548 U.S. at 68) (emphasis in original). In Wiley, the Court upheld summary judgment in a case where the alleged adverse action was the reduction in airtime from 17 minutes to 13 minutes for the plaintiff, a radio broadcasting personality, holding that this action was not a "material adversity." Thus, in Wiley, the employer's action actually slightly diminished the plaintiff's job responsibilities, but it was nonetheless considered the type of "trivial harm" insufficient to allow a reasonable jury to conclude that there was an adverse employment action. Here, the challenged action – denial of a single training class – did not even diminish Plaintiff's job responsibilities, and as Plaintiff conceded, while it caused her some inconvenience, it did not hamper her overall ability to perform her job. Thus, under the precedent that binds this Court, summary judgment for the Defendant is appropriate.[9]

---

9 Some of my colleagues have also concluded that an alleged retaliatory denial of training opportunities did not rise to the level of a materially adverse employment action when considered in the entire context. See, e.g. Allen v. Napolitano, 774 F.Supp.2d 186, 204 (D.D.C. 2011); Dorns v. Geithner, 692 F.Supp.2d 119, 133 (D.D.C. 2010).

11

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted as to Count I, Count II and Count III of the Complaint. This case is dismissed. An order accompanies this Memorandum.

Date: October 2, 2011            /s/
                                              ROBERT L. WILKINS
                                              United States District Judge